1373 Honeywell International v. Nokia Boy, this case has obviously been around for a very long time Since it's 12-13-2014 Did counsel coordinate their ties this morning? Apparently in suits as well Alright, so there's split time here Is that for purposes of arguing different issues or are you both going to argue the same thing? We intend to Our intention was I was going to start and get through as much as I could in my time Then Mr. Kuniski was going to pick up where I left off So we didn't intend to argue the same issues May it please the court Matthew Siegel for Appellant Fujifilm This is a case that involves a patent that was filed in bad faith A lawsuit that was initiated in bad faith A lawsuit that was litigated in bad faith I know but you've got findings by the district court which we're supposed to give deference to So how do you transcend or overcome that? Well your honor, if you look at the case law that supports the reason why we have deference If you look at Highmark, if you look at the SC Johnson case That we discussed in our reply brief at about page 36-37 The deference is based on the fact that the district court has lived with the case Is more familiar with the case And has insights that don't come through in the paper record Here we have a very unique situation The district court judge, Judge Stark, he picked up the case only after the time for the fee motions He didn't live with the case itself for one minute Judge Farnan, Judge Stein, Judge Jordan Is there any case that we've ever had that parses the result of the standard of review In the way you're suggesting that we would parse it? In terms of a new judge coming in, there are plenty of cases that for a variety of reasons switch judges Midstream or at some point in the case. Are you suggesting that that factor would result In a different standard of review for us to apply? In a sense, yes. I'm saying that when we have a situation where The district court judge had no action in the case, he's going to be looking at Exactly the same paper record as you are. In fact, this is a situation where Two of the judges on this panel most likely spent more time looking at The merits of the summary judgment decision than he may have It appears that he looked at the decision from Judge Farnan below But didn't really dig into the record, whereas this court Well, what shows you he didn't dig into the record? Well, I think he made a number of errors Which to me tell me he didn't really look much past the decision He says Honeywell had a color You're on very thin ice here, I think, from my perspective. I mean, it's one thing to say You take issue with him. It's certainly one thing to say that the law changed in the interim And this judge didn't have the benefit of the octane decision, and so he didn't apply The right factors or make the analysis in the right way. But to suggest That somehow we would discount his back findings, which in my view were Absolutely positively fine, because he was a new judge and didn't do his job right It's a little, it's asking a lot, I think Well, you are right. There is a change in the standard. We're no longer with clear and convincing evidence We no longer have the rigid standard. But if you look at what he found, he said there's no evidence That Honeywell failed to consider validity That comes out of the mouths of Honeywell's counsel They say, and I'm looking at page 833 in the appendix It was during the oral argument he was questioned by Judge Stark And he says, well, we looked at the patent and the prior art There was nothing about, there was no production of a prior art search So presumably he looked at the patent and the file wrapper Then he says, we did not see an on sale bar issue in the Ames proposal documents But then a few moments later he takes it back. He says, now I'll tell you I did not see these documents before the case was filed. I don't believe we looked at them It's a clear admission that he didn't consider what should have been screaming at him It should have been screaming at him that there's this on sale bar issue This was technology that was developed to be sold to Honeywell, excuse me, to be sold to Boeing They met with the inventors, they hired the inventors as consultants To be paid witnesses for the purpose of the trial The first question out of their mouths should have been, was this offered for sale to Boeing And then we know from Mr. Luther, the Thirty Big Six witness on document collection We know from Mr. Luther that they had collected Volume 3 of the Ames proposal Volume 3 has a table of contents which points to Volume 4 which is titled Price Offering in Contractual Terms and Conditions So it seems very clear to me that in fact They hadn't considered the validity issue So I think that's one error he made He also said Honeywell had a colorable basis for their position on the summary judgment motion The fact that summary judgment was granted The fact that Judge Farnan said all the technical people, the inventors And their supervisors knew that what was offered for sale was the two panel display And it's basic patent law 101 that all you need is an offer for sale Not a completed contract The fact that there was summary judgment granted and affirmed by this court Shows that no reasonable person could have held that position So I'm not sure his basis for that It's not automatic It's a factor to consider and due to not just The finding here but the specific findings by Judge Farnan That all the technical people at Honeywell knew about it Knew that they were offering the two panels, the two lens display I think that's another error. You're into your rebuttal so you're free to use the remaining minute But this is your rebuttal time now. I'd like to go back to the question with respect to what can this court do in terms of It outweighs the discretion of the lower court but I think there is a narrow circumstance that we're faced with here Which is when you look at the actual facts that were found by Judge Farnan And reviewed by this court, that's law of the case and those facts are very strong And what they are is that the district court found that Honeywell as a company knew It had offered the claimed invention to Boeing and it knew that there was a patent process That resulted in the asserted claim and I think given those facts and that sort of knowledge I don't really think there's any other conclusion but this would be an exceptional case. One of the things that Judge Stark indicated was that Under the current standards, that's correct, the proponents of the evidence. Now one of the arguments that Judge Stark had made was that Judge Farnan never said this was a frivolous case or that it was outrageous But he wasn't asked to find that. That wasn't one of the issues that he was reviewing. He was only reviewing the summary judgment motion but I believe that his language was such that it would imply that Because there are only two arguments... Is that still the standard under Octane? No, Your Honor. Under Octane, the standard is proponents of the evidence and you don't need sanctions In order to find an exceptional case. Let me ask you, what are you seeking here? Your Honor, we're seeking a finding that the case was an exceptional case. And then it goes back to the court who has discretion on whether or not to award fees. Correct. That's correct, Your Honor. And if you look at the language that Judge Farnan had used on the only two arguments that Honeywell had made Judge Farnan had a substantial dispute on whether at the time the offer was made It was ready for patenting. There were all of the complexities of the law of the on-sale bar And that too, the fact that he decided in favor of one side or the other After hearing the issues doesn't mean that there wasn't an argument. Actually, Your Honor, I don't think he had that sort of a problem with the law What he said was it was untenable that Honeywell took the position they hadn't offered the two lens array to claim defension. That was what he decided after he heard the evidence. That was what he decided after he heard the evidence Not that it was before the argument was raised So clear as that there was no basis for presenting the argument. Your Honor, I think of the second argument where he looked at Volume 4 When it was finally produced and he basically concluded the plain language of that document The title of the document was it was contract terms and conditions He then listed no less than 10 terms from that document which showed that it was an offer And then he says even Honeywell's own 30B6 witness admitted that it was an offer to Boeing that Boeing could have accepted So anyway, on that respect, I believe that it's implied. This is where the on-sale precedent arises. There are offers that are made and then you look at the state of the technology or not And have to resolve whether it's ready for patenting This is not a question to be decided by the engineers. This is a difficult legal question It was argued in front of Judge Farman who reached a conclusion Along comes Judge Clark and he credits the weight that Judge Farman gave to that argument With respect to now how clear it was Whether it was or wasn't exceptional from the fee-shifting viewpoint So it seemed to me that what we need to look at is exactly that which was raised by the Chief That was there a change in the standard which would change the result That's correct, Your Honor. There was a change in the standard that wasn't considered by Judge Stark In which case I guess this case would be remanded to Judge Stark to consider those issues Well in the short time that's remaining, do you want to give us a few points to support that argument? Yes, Your Honor. I'd like to give you a couple for one. One of the things that Judge Stark said is that there's no culpable basis to believe the patent would not have been held invalid The only issue that was considered was a 1989 invention disclosure statement Well that was clear error because that 1989 IDS was issued before Wait, I thought you were going to tell us examples of why the wrong standard was applied The pre-obtained standard and not the obtained standard Because the cases hadn't issued, Your Honor. I guess I'm not understanding the question Your time is running out so we may have already booted this out But what I was looking for were instances where it was clear or arguable that Judge Stark was applying the pre-obtained standard Yeah, he said he's under a clear and convincing standard in his decision That's what he was applying Alright, well you're into your rebuttal too so why don't we hear from the other side Good morning. May it please the Court Martin Lueck for Honeywell The reason we don't believe there needs to be any remand here is that it is true that Judge Stark Applied the Brooks Furniture Standard that was applicable at the time But if you look at Judge Stark's opinion, there's nothing to go back to be evaluated again I'm very disturbed by the production and non-production of Volume 4 In Samson's joint appendix Your client represented that No record or evidence that Volume 4 exists or was ever sent to Boeing But in fact Eventually Boeing produced Volume 4 Honeywell was the one who prepared that volume Was it not? Yes it was Your Honor How the heck did Boeing get it if it was never sent to them by Honeywell? Well it turned out that it was sent to them The basis of our response was we never found a copy of Volume 4 in Honeywell's records And that's true to this day And I can just go through the sequence of that production We turned over everything we had on Ames That extensive search that Ms. Olberts Refers to in her email You didn't go back and look again, did you? Outside of the documents that were in possession of Ms. Olberts We did Your Honor, and that's in the record In the declaration of Mr. Woods At appendix 5166 and 617 And then also Mr. Woods was at the two and a half hour hearing that we had with Judge Stark And Judge Stark asked him directly, and the court can see that in the transcript record At A41 Did Boeing deny to Honeywell that it had Volume 4? It did not, but when it was subpoenaed And first produced the documents, Boeing didn't find Volume 4 either And they didn't find it until there was then a follow-up request to go back and look for it And they had a subpoena in April of 2007 And it wasn't until November of 2007 that Boeing actually found Volume 4 and produced it But Honeywell did go back and look And that is in the record And in fact Judge Stark considered that and he found in footnote 10 On appendix A11 that Honeywell looked repeatedly for Volume 4 And it wasn't just us lawyers looking for it, we asked Honeywell to go back And search for it as well A second separate request? That's correct Your Honor, and I would direct the court to Ms. Obert's letter of September 14 of 2007 At A8421 that said in response to each request so far We have diligently searched for the document and we have been unable to locate it And that remains true today And so the point that I would make on remand is simply that Judge Stark Looked at all of this evidence. He had 8,000 pages in front of him When this motion was made. We had a two and a half hour hearing One of the factors he applied was the fact that there were numerous licenses That had been entered into by other accused infringers Is that standard, has that been applied by us in any cases that you know? Because it seems to me, there could be, there was no examination of the amount Paid for the licenses and also I mean we know that People settle cases for licenses just because it's less than the attorney's fees that it's going to cost to litigate So I guess I was, do you know of any cases where we have said That just the entry of licenses by other accused infringers is a factor That goes to whether or not the case is exceptional? I do not have any case to cite to the court where that is Do you understand my concern about the application of that standard? It could be misleading unless one does an investigation of the licenses themselves I do understand the court's concern. It was very Deeply discussed. I would just point out at page 12 of Judge Stark's Order and I think if you look at the findings that he put forth That is not one of the points upon which his decision necessarily turned But within that license milieu He broke out the licenses that were entered into before this argument was made And after. And it was Optrex who first raised this argument And it was Optrex who settled after raising it. And I would also Point out that the volume 4 was actually produced in the litigation in 2007 In November. And it wasn't until October of 2009 That a summary judgment motion was brought. There was never a motion to compel Never any issue raised with respect to sanctions. Never a letter From any of the defendants suggesting that we should drop the case And the case proceeded to summary judgment. We disagreed with Judge Farman's ruling But it was a very hard fought, close case. And Looking at what Judge Stark did afterwards, he not only considered The paper record and made... How do you fairly characterize it as a close case? The way I characterize it that way, Your Honor, is that this was a very complex Contract. Honeywell agreed that they would build the cockpit. They agreed to do it And different aspects to it. But at the time, the technology that was going to go Into the cockpit had not been developed. And that was something to do in the future There was no hardware to be accepted at the time of this volume 4. And the court Can see that in paragraph 28. It's kind of hard to swallow that Given that the title of volume 4 is Price Offering and Correct Contractual Terms And Conditions, right? Yes, that's true. It was so it was On Honeywell... But yes, that's true. It's kind of hard to swallow it. Well, no, I Would draw a distinction there, Your Honor. And the distinction I would draw is really in this court's decision In 3M versus CHEMQ. All we had ever done up to that point was give them samples. And evaluative activity of that type doesn't Make an offer. We didn't know what that panel would look like. And there was nothing for Boeing to accept until all of the design reviews... So you're saying the title was erroneous? That it was misleading? No, the title was correct, but the hardware The specific things to sell them had not been developed. So, for example, a two-lens array unit, which we're fighting about here We didn't know that that would work in the cockpit. A one-lens array, as it turned out, there were no lens Arrays in the flat panel that went into the Boeing cockpit. So the point is the Contract, yes, Honeywell won the contract, won the right to provide the cockpit But then had to develop the technology to put in that cockpit. And that's the IOLI affidavit of paragraphs 28 and paragraph 20. So, you know, the principal dispute that we had was over These drawings. Yes, did our inventors experiment to try to figure out How they could make something that both of the pilots could look at and see with equal Luminance across the screen? They certainly did. But until something had been Developed and gone through the entire design process... You argued that there was no... So the actual AIMS proposal itself only had one lens in it. And these two-lens arrays, you know, it's another error I thought the district court made. The district court conflated an earlier program, the flat panel Display program, with the AIMS program. Honeywell engineers demonstrated To Boeing when they were trying to win this contract, hey, we've done a lot of work on But in our view, that was never offered to Boeing. And we could not have stood behind that as a piece of technology at that time That Boeing could actually use in an aircraft cockpit. And it didn't. So that was the underlying dispute. Obviously, I'm not taking issue With that. But if we look at this court's decisions in Speedplay and Suggest that just because of the summary judgment, that should give rise to a Finding of exceptional case. And that's simply not the law. It does seem to me that the standards, or at least some of the suggestions made in Judge Stark's opinion Suggest that he appropriately at the time certainly was using the Brooks furniture, the previous Standard, as he should have. But something changed after that. And so I guess, how are you so certain that the standard Even though a different standard was applied, that how are we supposed to be so certain That the result wouldn't have been different under the application of a looser, different standard of octane? Sure. I understand, Your Honor. And so if we look at what Judge Stark Actually found, he found no evidence that Honeywell failed To consider validity. He found that there was What he characterized as the odd conspiracy that was proposed was Far from proven. He found that Honeywell had a colorable basis To proceed, both in the substance of the On sale bar issue and also after the Ames proposal was Well, as I read Judge Stark's opinion, and as I read octane, I would say What survives is the objective prong of the test. And I think that his statement of colorable basis is a statement of Objective evaluation of the merits. And he went deeper. He looked In his footnote 11 on page 12. He talked about Reading Judge Farnan's, let me make sure, oops, I may have, let me make sure I've been Actually, it's footnote 8 on appendix 11. My apologies. He talks about his review of Judge Farnan's Analysis of the Ames proposal, and I think he fully Understood what those arguments were, and he was talking about The objective basis of those arguments. And so I think if you look at this court's Decision in consolidated aluminum where we talk about When to remand and when not, this is a case, even though consolidated aluminum Doesn't reach this issue precisely, the principle holds. There's no need to Remand because the result is going to be the same. What do you say to your friend's argument, the first argument he made, which I shut down, but Nonetheless, what do you make of the argument that this was not the same district judge who Had the experience of dealing with all the give and take and what went down in this Case? So the normal level of deference that is applied ought not to be applied here. Well, you know, Highmark says, puts the abuse of discretion standard Front and center. It doesn't draw a distinction that the court sitting in the trial court Be the same court that has handled each and every motion. And in fact, it's A regular occurrence that courts, judges change. We have three different judges In this case. So the abuse of discretion standard is, in my view, the standard that has to Be applied. You look to the reasoning of Judge Stark. I don't see that to be Anything out of the ordinary here. He obviously did a very thorough review of the evidence and Carefully considered the arguments. And that's what district courts are to do. Unless there's anything further, I'll sit down. Okay, so we've got, you've got one minute left and you've got two minutes left. Do you want to continue to divide that up? I'll try to speak quickly. I would take extreme exception to what they say about having gone back to the Honeywell documents and looked at the Honeywell documents. If you read the documents We've identified in our brief, they say we went back and looked at what we collected. We went to X employees and then the We're not going to go back and look at it. I think that when Judge Stark Talks about objective baselessness, that's a rule 11 kind of an issue that Octane said we're not going to look for that kind of a thing anymore. And the Ames proposal does identify a two lens system at A12927. It says we're going to deliver a DU or a D9. D9 is what Judge Farnan expressly says in the record clearly shows Is a two lens system. So I take exception to that. The Ames proposal did disclose A two lens system. And I think I'm out of time. Yes. Your Honor, the argument was made that the technology didn't Exist prior to volume four. As my colleague indicated, it wasn't volume three. It's also again stated that it's in volume three at A269 and A3700. In addition, Honeywell's own experts Stated that the two lens array was reduced to practice and this was prior to Volume four and that's at A15339 Or 389. And this was the same argument that Judge Farnan Had said was untenable to suggest that it wasn't offered. The other issue with Respect to this volume four being searched for, and I know my Colleague, Ms. Obert, saying you said you were going to conduct another investigation in addition To the re-review of the documents that had already been produced. We specifically Asked her in the September 12th letter, Elizabeth Braun Said, you know, did you conduct another investigation or was it merely a re-review? The response back in September 14th by Ms. Obert was basically, you know, you Don't have it either. Well, they did have it and they never went back And there's no evidence in the record they ever went back to search. The only evidence Or not evidence, but argument was in Mr. Wood's declaration, paragraph 43 And what does he say? He doesn't say anything about another search. All he says is See Stacey Obert's letter, okay, which basically didn't respond to the question. With that, Your Honor, we'll rest and debrief. Thank you very much.